In re Thelma A. WILLIAMS, Debtor.

Gregory P. Johnson, Chapter 7 Trustee, Plaintiff,

v.

Internal Revenue Service, Defendant.

Bankruptcy No. 94–1–4647–DK.
Adversary No. 98–1–A470–DK.

United States Bankruptcy Court, D. Maryland, at Greenbelt.

July 12, 1999.

Melissa A. Holton, Counsel for the Internal Revenue Service.

James M. Hoffman, Counsel for the Chapter 7 Trustee, Gregory P. Johnson.

### MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

The Trustee has filed a Complaint To Determine Tax Liability ("Complaint"), requesting that the court determine that the estate's liability for income taxes for the sale of debtor's property is zero due to the use of the 26 U.S.C. § 121 exemption. 11 U.S.C. § 505 provides that the Bankruptcy Court may make such a determination. The issue raised by the Complaint is a question of first impression in this jurisdiction and arises in or governs the rule of decision for contested matters raised in at least two other cases which are pending before this court.[1]

The Complaint avers that the Chapter 7 Trustee and the bankruptcy estate are not liable for taxes upon income arising solely from capital gains realized upon the sale of the principal residence of the debtors, as a result of the application of the exclusion from income set forth in 26 U.S.C. § 121[2]. The Internal Revenue Service of the United States of America ("IRS") asserts in its answer that a Trustee in bankruptcy cannot utilize the exclusion for sale of residence contained in Section 121.

Cross motions for summary judgment have been filed by the parties and a hearing upon those motions conducted, after which the court held the matter under advisement. The court finds that material facts are not in dispute and that summary judgment is appropriate.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Sylvia Dev. Corp. v. Calvert County, Maryland*, 48 F.3d 810, 817 (4th Cir. 1995). In considering a motion for summary judgment the court must view all permissible inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tuck v.*

---

**1.** *Scott Field, Trustee v. Internal Revenue Service (In re Slye)*, 97–18734–DK (Bankr.D. Md. filed Aug. 7, 1997); *In re Burke*, 98–21969–DK (Bankr.D. Md. filed Sept. 10, 1998).

**2.** Further citations to "Section 121" are references to 26 U.S.C. § 121.

*Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992). Summary judgment is appropriate only if, taking the record as a whole, a reasonable jury could not possibly return a verdict in favor of the non-moving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Debtor, Thelma A. Williams, filed a Chapter 13 bankruptcy case on August 30, 1994. On October 24, 1996, the case was converted to a case under Chapter 7. Gregory Johnson, Esquire was appointed and qualified and is serving as Chapter 7 Bankruptcy Trustee for the estate. As a part of his administration of the bankruptcy estate, the Trustee filed a notice of sale and a motion to sell the residence of the debtor, free and clear of all liens and encumbrances. On February 11, 1998, the court entered an Order approving the sale of the residence free and clear of all liens, with all liens and encumbrances attaching to the proceeds. Subsequently, expenses of conducting the sale were paid and a judgment lien upon the property satisfied. There remains in the estate the sum of $91,982.77 from proceeds from the sale.

According to the averments set forth in the memorandum in support of summary judgment filed by the Trustee, there are at this time approximately $18,200.00 in unpaid outstanding administrative expenses which may be allowed in this case and claims have been filed and allowed for unsecured creditors in the amount of $19,583.94.

It is undisputed that the basis of the debtor in the residential property is approximately $10,000.00 for tax purposes. Unless the Trustee can apply the exclusion, the substantial capital gains realized by the sale would represent taxable income to the estate, resulting in an approximate tax liability in the amount of $16,396.00. 26 U.S.C. § 61(a). The debtor has not applied for, nor otherwise utilized the exclusion set forth under Section 121 for a period beginning at least two years prior to the filing of the petition instituting this bankruptcy case.

Section 121 provides in relevant part:

Exclusion of gain from sale of principal residence

(a) Exclusion.—Gross income shall not include gain from the sale or exchange of property if, during the 5–year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 years or more.

(b) Limitations.—

(1) In general.—The amount of gain excluded from gross income under subsection (a) with respect to any sale or exchange shall not exceed $250,000.

(2) Special rules for joint returns.—In the case of a husband and wife who make a joint return for the taxable year of the sale or exchange of the property—

(A) $500,000 limitation for certain joint returns.—Paragraph (1) shall be applied by substituting "$500,000" for "$250,000" if.—

(i) either spouse meets the ownership requirements of subsection (a) with respect to such property;

(ii) both spouses meet the use requirements of subsection (a) with respect to such property; and

(iii) neither spouse is ineligible for the benefits of subsection (a) with respect to such property by reason of paragraph (3).

(B) Other joint returns.—If such spouses do not meet the requirements of subparagraph (A), the limitation under paragraph (1) shall be the sum of the limitations under paragraph (1) to which each spouse would be entitled if such spouses had not been married. For purposes of the preceding sentence, each spouse shall be treated as owning the property during the period that either spouse owned the property.

(3) Application to only 1 sale or exchange every 2 years.—

 (A) In general.—Subsection (a) shall not apply to any sale or exchange by the taxpayer if, during the 2–year period ending on the date of such sale or exchange, there was any other sale or exchange by the taxpayer to which subsection (a) applied.

 (B) Pre–May 7, 1997, sales not taken into account.—Subparagraph (A) shall be applied without regard to any sale or exchange before May 7, 1997.

It is uncontested by the IRS that if the exclusion set forth in Section 121 is applicable to the sale of a debtor's principal residence by a Chapter 7 Trustee, the sale of the subject property in the instant adversary proceeding would otherwise qualify for the exclusion.

 The IRS asserts that the estate in bankruptcy is not qualified to use the exclusion at issue in this case. The argument of the IRS is grounded upon 26 U.S.C. § 1398[3]. That section provides that upon the filing of a petition under Title 11 of the United States Code[4], an estate in bankruptcy is created that is a taxable entity.

Except as otherwise provided in this section, the taxable income of the estate shall be computed in the same manner as for an individual. The tax shall be computed on such taxable income and shall be paid by the Trustee.

26 U.S.C. Section 1398(c). The exclusion from capital gains is only available upon the sale of the taxpayer's principal residence.[5] The IRS asserts that only an individual taxpayer may possess a principal residence.[6] The IRS argues that although the tax on the bankruptcy estate is computed in the same manner as for an individual, the estate is not an individual. Therefore, the IRS concludes that the exclusion is not available to a Trustee in a Chapter 7 case. Furthermore, the IRS points to Section 1398(g) which provides a list of tax attributes to which the bankruptcy estate succeeds in computing the estate's taxable income.[7] The exclusion from bankruptcy is not specifically listed in subsection (g).

Several courts have concluded in other jurisdictions that the bankruptcy estate does not succeed to the individual debtor's capital gains exclusion upon the sale of a residence. *In re Barden*, 205 B.R. 451

---

**3.** Further citations to "Section 1398" are references to 26 U.S.C. § 1398.

**4.** Title 11 of the United States Code codifies the United States Bankruptcy Code.

**5.** 26 U.S.C. § 121(a).

**6.** *See In re Mehr*, 153 B.R. 430, 433 (Bankr. D.N.J.1993).

**7.** Section 1398(g) reads:

The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—

 (1) Net operating loss carryovers.—The net operating loss carryovers determined under section 172.

 (2) Charitable contributions carryovers.—The carryover of excess charitable contributions determined under section 170(d)(1).

 (3) Recovery of tax benefit items.—Any amount to which section 111 (relating to recovery of tax benefit items) applies.

 (4) Credit carryovers, etc.—The carryovers of any credit, and all other items which, but for the commencement of the case, would be required to be taken into account by the debtor with respect to any credit.

 (5) Capital loss carryovers.—The capital loss carryover determined under section 1212.

 (6) Basis, holding period, and character of assets.—In the case of any asset acquired (other than by sale or exchange) by the estate from the debtor, the basis, holding period, and character it had in the hands of the debtor.

 (7) Method of accounting.—The method of accounting used by the debtor.

 (8) Other attributes.—Other tax attributes of the debtor, to the extent provided in regulations prescribed by the Secretary as necessary or appropriate to carry out the purposes of this section.

(E.D.N.Y.1996), *affirmed,* 105 F.3d 821 (2nd Cir.1997); *In re Mehr,* 153 B.R. 430 (Bankr.D.N.J.1993). The facts in those reported cases include that the tax year was governed by a predecessor version to Section 121.

Among other differences, the previous edition of Section 121 limited taxpayers to a one time use of the capital gains exclusion. Furthermore, the earlier statute required that the taxpayer reach 55 years of age in order to be eligible for the exclusion. Permitting a Trustee in bankruptcy to make that one time use would have disenfranchised the individual debtor from any subsequent use during the debtor's lifetime.

> Unlike its predecessor, the current version of section 121 does not require an election by the taxpayer. Instead, the amended section 121 simply states that the gain from a sale or exchange of property is not included in gross income if "during the five-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating two years or more."

*In re Munster,* 226 B.R. 632, 634 (Bankr. E.D.Mo.1998).

The court in the *Munster* case, concluded that under the current version of Section 121, the bankruptcy estate may utilize the capital gains exclusion. The opinion points out that the court in *Mehr,* applying the previous version of the statute, concluded that the bankruptcy estate could not meet the requirements for application of the exclusion, including being of 55 years of age. Under the current version of the statute, the age requirement has been eliminated and, as aforesaid, there is no longer a one time election.

In the *Munster* case it was the Chapter 13 Trustee, not the debtors that urged the application of the tax exclusion. In their proposed rehabilitation plan, the debtors computed the value of the family residence for purposes of the hypothetical distribution to Chapter 7 creditors based upon an assumption that the exclusion was inapplicable to a sale by the Chapter 7 Trustee. As the hypothetical payment of the capital gains tax reduced the hypothetical Chapter 7 distribution to creditors, the debtors proposed a lower payment in their Chapter 13 plan. The Trustee objected to confirmation asserting that the plan payments must be at a level which would equal a Chapter 7 distribution to creditors without deduction for capital gains tax under a hypothetical Chapter 7 sale. The court, in sustaining the Trustee's objection, found that the exclusion would be applicable to a sale of the residence by the Chapter 7 Trustee and therefore the debtor's plan failed to provide the minimum amount to creditors required by 11 U.S.C. § 1325(b)(1)(A).

It appears that the preponderance of more recent decisions agrees with the result enunciated by the *Munster* court. In the case of *In re Popa,* 218 B.R. 420 (Bankr.N.D.Ill.1998), the court likewise concluded that the Chapter 7 Trustee was entitled to application of the capital gains exclusion under the current version of the statute. In *Popa,* the debtor sought to require the Chapter 7 Trustee to abandon the principal residence, asserting there was no realizable equity for the estate. Debtor included in his computation an expense for income tax to be paid upon a disposition of the property by the Chapter 7 Trustee. The court denied the motion to compel abandonment, finding that the exclusion under Section 121 would prevent such tax from depleting the equity in the property for the estate.

The reasoning of the *Popa* court was adopted by the United States Bankruptcy Court for the Middle District of Tennessee in the case of *In re Bradley,* 222 B.R. 313 (Bkrtcy.M.D.Tenn.1998).

> *Popa* accurately observes that the 1997 amendments to § 121 undermine the policy arguments in *Mehr* and *Barden* against use of the exclusion by a bank-

ruptcy trustee. More importantly, *Popa*'s construction of I.R.C. § 1398 is true to the plain meaning of the words in that section, gives effect to all of its subsections, and avoids the dead spots and lapses of logic created by the construction in *Mehr* and *Barden*.

*Id.* at 315 (citing *Popa*, 218 B.R. at 426–27).

As pointed out by the Honorable Keith Lundin in his examination of Section 1398 in this persuasive opinion:

This conclusion is also compelled by §§ 1398(c)(1) and (f)(1). Subsection (c)(1) says that an estate is taxed like an individual. Subsection (f)(1) says that the transfer of property from the debtor to the estate is not a disposition for tax purposes, and "the estate shall be treated as the debtor would be with respect to such asset." When those provisions are read with subsection (g)(6), the only plausible conclusion is that the estate is liable for the same tax, and entitled to the same exclusion, as the debtor would be on the sale of the Property."

*Bradley*, 222 B.R. at 315.

Not all recent cases have departed from the earlier conclusions enunciated in *Barden* and *Mehr*. In the case of *In re Winch*, 226 B.R. 591 (Bankr.S.D.Ohio 1998), the court concluded that the analysis in *Mehr* remained applicable to the current statute and took issue with the reasoning in the decisions in *Popa* and *Bradley*. However, the opinion in *Winch* appears to be a small minority voice.

Most recently, the United States District Court for the Western District of Washington in the case of *In re Kerr*, 1999 U.S. Dist. LEXIS 2310 (W.D.Wash. Feb. 9, 1999), affirmed the United States Bankruptcy Court for that district, determining that since the bankruptcy estate succeeds to the character of the debtor's assets under Section 1398, it is entitled to the

Section 121 exclusion from income. The court cites with approval to the decisions in *Popa* and *Bradley*.

■ This court finds persuasive the reasoning of the courts in the *Kerr*, *Popa*, *Bradley*, and *Munster* cases. Forbearing to simply repeat the persuasive holdings of those opinions, this court adopts the reasoning set forth therein and concludes that the exclusion from income available to a taxpayer under Section 121, is available to the bankruptcy estate of that individual debtor when the principal residence is sold during the bankruptcy case. To hold otherwise would create a result which appears clearly opposed to congressional intent.

The result urged by the IRS in the instant case would be to deprive the individual debtor of the benefit of an exclusion which clearly is available to that individual under the Internal Revenue Code. There is no question that should the debtor sell this home outside a bankruptcy case, the exclusion would apply to the capital gains. However, the IRS urges that this court interpret the statute so that where the sale is under the auspices of the Chapter 7 Trustee, the debtor will receive the remaining balance of the proceeds, after payment of all claims in this case, minus a capital gains tax which the service asserts against those proceeds.

This would directly undermine the "fresh start"[8] policy which has been the bedrock of bankruptcy law. There is nothing in any of the statutes that indicates any intent by Congress to strip the debtor of a portion of assets which would remain to the debtor after bankruptcy, by the imposition of a tax which the debtor would not otherwise incur outside of the bankruptcy case. In effect, such result would levy against an individual a tax only applicable to a bankruptcy debtor. Such a result would, in this court's opinion, turn

8. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) ("One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor

from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' ").

the language and intent of the tax and bankruptcy statutes on their head.

For these reasons, this court holds that a Trustee in bankruptcy can utilize the exclusion for sale of the residence of a debtor set forth in 26 U.S.C. § 121 to exclude income realized as capital gains from such sale, to the extent that the individual debtor could have utilized the exclusion.

An Order in conformity with this Opinion will be entered.